# EXHIBIT E

EXHIBIT 2

## ESCROW AGREEMENT

THIS AGREEMENT ("Agreement") dated as of October 29, 2008, by, between and among Carl G. Santangelo & Associates, P.A., a Florida professional association ("CGS"), having an office at 3000 N. Federal Highway, Building Two, Suite 200, Ft. Lauderdale, FL 33306, Michael H. Clinton, Esq., as escrow agent (the "Escrow Agent"), having an office at 212A New London Turnpike, Glastonbury, CT 06033; Michael S. Goldberg, LLC, a Connecticut limited liability company, d/b/a Acquisitions Unlimited Group ("MSG") having an office at ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ and AUG, LLC, a Florida limited liability company ("AUG"), having an office at 3000 North Federal Highway, Building 2, Suite 200, Fort Lauderdale, FL 33306.

**WITNESSETH:**

WHEREAS, AUG intends to loan MSG Two Million ($2,000,000) Dollars pursuant to that certain Loan Agreement, attached hereto as Exhibit "A";

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements set forth herein, the receipt and sufficiency thereof being acknowledged by the parties, the parties agree as follows:

1. MSG and CGS hereby designate and appoint the Escrow Agent as escrow agent to serve in accordance with the terms and conditions of this Agreement, and the Escrow Agent hereby agrees to serve in said capacity upon said terms and conditions.

2. CGS shall deliver $2,000,000 to the Escrow Agent. The Escrow Agent shall deposit such funds in a segregated interest bearing escrow account for the benefit of AUG at a bank mutually agreed upon in writing by MSG and CGS.

3. It is agreed to and understood by the parties hereto that MSG has entered into a Foreclosure Manifest Purchase Agreement with JP Morgan Chase/Chase Manhattan Bank ("Chase") wherein it is purchasing construction materials under Purchase Order ▅▅▅▅▅▅▅. A copy of the referenced agreement with Chase is attached hereto as Exhibit "B" (the "Chase Contract").

MSG hereby warrants and represents that it has transferred $1,200,000 to Chase in partial payment of the Chase Contract. Escrow Agent shall, when directed in writing by MSG and CGS, pay Chase the $2,000,000 in escrowed funds to be applied to the Chase Contract.

Notwithstanding anything to the contrary in this Agreement, CGS, at its option, may deliver loan proceeds directly to Chase in final payment of the Chase Contract.

4. It is agreed and understood by the parties hereto that MSG has entered into that certain agreement with ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅, for the purchase and sale of the construction materials which MSG is

(-1-)

purchasing from Chase, as referenced above. Paragraph 4 of such contract with ▓▓▓▓▓▓▓ to pay MSG the purchase price by wire transfer to MSG's account at Bank of America. MSG agrees herein to advise ▓▓▓▓▓ that the wire instructions contained in the referenced paragraph 4 of their contract be amended so that the purchase funds will be wired to the segregated escrow account established by Escrow Agent as referenced in paragraph 2, above. MSG's notice to ▓▓▓▓▓ shall have an acknowledgment executed by ▓▓▓▓▓ confirming ▓▓▓▓▓'s new wiring instructions to Escrow Agent. It shall be a condition precedent to CGS's obligation to wire $2,000,000 to Escrow Agent that ▓▓▓▓▓ acknowledge such new wiring instructions to Escrow Agent's escrow account.

5. Upon receipt of the referenced ▓▓▓▓▓ proceeds by Escrow Agent, Escrow Agent hereby agrees to wire, within five (5) business days of receipt, to CGS, $2,000,000, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ AUG's account with Escrow Agent. The balance of the ▓▓▓▓▓ ds, less Escrow Agent's fees, shall be paid by Escrow Agent to MSG as MSG instructs.

6. It is agreed and understood to the parties hereto that MSG and Chase have entered into a Contract Dissolution Capital Protection Clause wherein Chase has agreed to refund MSG's payment for the construction materials listed in Purchase Order # ▓▓▓▓ should ▓▓▓▓▓ not purchase such items from MSG. If ▓▓▓▓ defaults on its referenced contract with MSG, MSG hereby agrees to immediately instruct Chase to refund such previously paid proceeds to the Escrow Agent escrow account. Within five (5) business days of the receipt of such funds from Chase, Escrow Agent hereby agrees to wire to CGS, $2,000,000 plus interest earned in AUG's account with Escrow Agent, if any. The balance of the Chase proceeds shall be paid by Escrow Agent to MSG as MSG instructs.

7. The acceptance by the Escrow Agent of its duties under this Agreement is subject to the following terms and conditions, which will govern and control with respect to the Escrow Agent's rights, duties, liabilities and immunities:

(a) The duties and obligations of the Escrow Agent will be determined solely by the provisions of this Agreement, and the Escrow Agent shall not be liable to any persons except for the performance of such duties and obligations as are specifically set forth in this Agreement.

(b) The Escrow Agent will be fully protected in acting and relying upon any written advice, certificate, notice, direction, instruction, request, order, judgment, decree or other document given to it which the Escrow Agent in good faith believed to be genuine and to have been signed or presented by the proper party or parties, and may assume that any person purporting to give such advice, certificate, notice, direction, instruction, request or other document has been duly authorized to do so. The Escrow Agent assumes no responsibility for the accuracy of the recitals in any such document.

(c) The Escrow Agent may seek the advice of legal counsel in the event of any dispute or question as to the construction of any of the provisions of this Agreement or its duties hereunder, and may rely on an opinion of such counsel. In rendering such opinion,

(-2-)

such counsel may rely on statements of fact furnished to them by persons reasonably believed by such counsel to be credible, and such counsel will have no liability for the accuracy of the facts so relied upon, nor will such counsel have any liability for matters of their own judgment forming a part of the process of providing such opinion.

(d) The Escrow Agent, and any successor escrow agent, as the case may be, may resign as escrow agent and be discharged from all further duties and obligations hereunder at any time upon giving 30 days notice to CGS and MSG. Thereupon, CGS and MSG shall designate a successor escrow agent hereunder within such 30 day period to whom the Escrow Agent shall deliver any funds being held in escrow. Further, CGS and MSG may jointly (but not unilaterally) at any time, terminate Escrow Agent as escrow agent under this Agreement by giving 30 days written notice to Escrow Agent and, in such event, must designate a successor escrow agent to whom Escrow Agent will deliver any funds being held in escrow.

8. All communications, notices, requests, instructions, consents or demands given under this Agreement will be in writing and will be deemed to have been duly given when delivered to, or mailed by prepaid registered or certified mail addressed to, the party for whom intended, as follows, or to such other address as may be furnished by such party in the manner provided herein:

If to CGS and/or AUG, LLC

Carl G. Santangelo & Associates, P.A.
3000 N. Federal Highway
Building Two, Suite 200
Ft. Lauderdale, FL 33306
Attn: Carl G. Santangelo

If to the Escrow Agent:

Michael H. Clinton, Esq.
212A New London Turnpike
Glastonbury, CT 06033

If to MSG:

Michael S. Goldberg, LLC


9. This Agreement will in all respects be governed by and construed under the laws of the State of Florida. Venue shall be Broward County, Florida.

10. This Agreement sets forth the entire understanding of the parties hereto with respect to its subject matter, merges and supersedes all prior and contemporaneous understandings and may not be waived or modified, in whole or in part, except by a writing signed by each of the parties hereto. Escrow Agent shall not be bound by any other agreement between the parties hereto even if it has knowledge thereof. No waiver of any provision of this Agreement in any instance may be deemed to be a waiver of the same or any other provisions in any other instance.

(-3-)

11. This Agreement may be executed in counterparts and will be binding upon, enforceable against, and inure to the benefit of, the parties hereto and their respective successors and assigns, and nothing herein is intended to confer any right, remedy or benefit upon any other person.

12. If any provision of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, this Agreement will be interpreted and enforceable as if such provision were not contained herein, the provisions of this Agreement being severable in any such instance.

13. The parties hereto agree and understand that certain confidential information of MSG has been provided to the other parties for evaluation purposes. Such information (the "Evaluation Material") includes, but is not limited to, the Chase Contract, the Swinerton Contract and the Chase Contract Dissolution Capital Protection Clause. The parties hereto agree that the Evaluation Material will be kept confidential and, without the prior written consent of MSG, will not be given to any other parties. Notwithstanding the foregoing, the members of AUG, LLC may be orally advised of the Evaluation Material.

IN WITNESS WHEREOF, each of the parties hereto has executed this Escrow Agreement as of the date first set forth above.

_____          CARL G. SANTANGELO & ASSOCIATES,
Witness Cheryl B. MacGillivray      P.A., a Florida professional association

_____          By: CARL G. SANTANGELO, President
Witness

_____
Witness
Laura P. Clinton
_____          _____
Witness                            MICHAEL H. CLINTON, ESQ.

                                   MICHAEL S. GOLDBERG, LLC, a
_____          Connecticut limited liability company d/b/a/
Witness                            Acquisitions Unlimited Group
Laura P. Clinton
_____
Witness                            By: MICHAEL S. GOLDBERG, Managing
                                   Member

                                   AUG, LLC, a Florida limited liability company
_____
Witness
Laura P. Clinton
_____          _____
Witness                            By: AUG Partners, LLC, Managing Member
                                   _____
                                   By: Robert Stein, Managing Member

(-4-)