## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

IN RE

| | |
|---|---|
| MICHAEL S. GOLDBERG, LLC | CASE NO.    09-23370 (ASD) |
| MICHAEL S. GOLDBERG, | 09-23371 (ASD) |
| | CHAPTER 7 |
| Debtors. | Jointly Administered Under |
| ——————————————————/ | Case No.    09-23370 |
| JAMES BERMAN, Chapter 7 Trustee for the | ADV. NO.    11-2013 |
| Estates of MICHAEL S. GOLDBERG, LLC | |
| and MICHAEL S. GOLDBERG, | |
| | |
| Plaintiff, | |
| | |
| vs. | |
| | |
| AUG LLC, et al., | April 6, 2011 |
| | |
| Defendants. | |
| ——————————————————/ | |

### LLC MEMBER DEFENDANTS' MOTION TO DISMISS
### AND TO STRIKE PORTIONS OF TRUSTEE'S COMPLAINT[1]

Defendants Nancy Adelis, Thomas Almy, Baystate Capital, LLC, Edward B. Caudill,

Jeffrey Chizmas, Stuart J. Cohen, individually and as beneficiary of Stuart Cohen IRA, Dixie

Plumbing Service, Inc., B. James Doerksen, Kirk Elyakin, Marilyn Elyakin, Robert H. Fier,

Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, Financial

Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Financial Security

Services Defined Benefit Plan, Financial Security Services, LLC, Barry Gorsun, Deborah

---

[1] In filing this Motion, the LLC Member Defendants do not acknowledge, and specifically note their objection to, any finding that certain claims in the Trustee's Complaint – specifically, Counts VI, VII and VIII – are "core" proceedings subject to this Court's jurisdiction under 28 U.S.C. § 157(b)(1). To the extent these claims are not core proceedings, the Court's authority is limited to submitting proposed findings of fact and conclusions of law to the District Court.

Yalowitz Haile, Howard McDonald Haile, Haley Family Limited Partnership, Debra Hoffman, as Trustee of Hoffman Family Trust, Hyatt Family Limited Partnership, Gilbert E. Hyatt, III, as General Partner of Hyatt Family Limited Partnership, and as General partner of Haley Family Limited Partnership, Gilbert E. Hyatt, IV, Patty R. Hyatt, as General Partner of Hyatt Family Limited Partnership and as General Partner of Haley Family Limited Partnership, Robert Jerome, Jill S. Kadingo, Richard M. Kadingo, Jess Kravitz, Jason Lieblich, Marcus Family Partnership, Steven E. Marcus, as General Partner of Marcus Family Partnership, Jay Marmer, individually and as Trustee of Marmer Family Trust, and as Trustee of Financial Security Services Defined Benefit Plan, and as Trustee  of Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Jeremy Marmer, Joshua Marmer, Mark Marmer, Shirley Marmer, Stefani J. Marmer, individually and as Trustee of Marmer Family Trust, Tovah Marmer, Mark Moskowitz, as Trustee of Cat's Paw Trust, Elliot D. Pollack, as Beneficiary, Administrator, Manager of Trustee of Property Administration Specialists Inc. 401(k) Plan for the Benefit of Elliot D. Pollack, Property Administration Specalists 401(k) Plan for the Benefit of Mr. Elliot D. Pollack, Sidney Richman, N. Louis Shipley, Strategem Associates, Inc., and Jeffrey Webster (collectively, the "LLC Member Defendants") hereby move to dismiss the Trustee's Complaint (DE#1) for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed.R.Bankr.P. 7012, and move to strike portions of the Complaint pursuant to Fed.R.Civ.P. 12(f) for failure to comply with Fed.R.Civ.P. 10, as incorporated by Fed.R.Bankr.P. 7010.

The Trustee's Complaint: (1) fails to support the Trustee's assertion of claims against the LLC Member Defendants as "initial transferees" of any transfers by the Debtors; (2) fails to support the Trustee's assertion that any transfers were "for the benefit of" the LLC Member

2

Defendants; (3) fails to establish the Trustee's standing to pursue claims under the Florida

Limited Liability Company Act; (4) fails to support the contention that the LLC Member

Defendants were the recipients of distributions from an insolvent Florida limited liability

company; (5) fails to establish any basis for a permanent injunction against the LLC Member

Defendants; (6) fails to establish any basis for a claim for attorney's fees; and (7) improperly

contains four pages of argumentative narrative untethered to any specific factual allegations. In

support of this Motion to Dismiss, the LLC Member Defendants state:

## BACKGROUND

Each of the LLC Member Defendants were passive investors in Florida limited liability

companies formed by Robert Stein – AUG, LLC and AUG II, LLC (the "AUG Entities"). Mr.

Stein was the principal of the Managing Member of the AUG Entities, and had sole

responsibility for their management and activities. The AUG Entities and Mr. Stein have also

been named as defendants in this action.  The AUG Entities were formed for the purpose of

providing funds to Michael S. Goldberg LLC ("Goldberg" or "Debtor") to be used to purchase

and resell foreclosed business assets at a profit. The individual LLC Member Defendants

provided funds to the AUG Entities in exchange for acquiring membership interests, pursuant to

which they were to receive certain distributions.

There is a notable absence in the Complaint of any allegations of any direct relationship

between the Debtors and the LLC Member Defendants. The Trustee does not allege that there

was any contract or agreement between any LLC Member Defendant and the Debtors. The

Trustee does not allege that the LLC Member Defendants were the ones who determined whether

or not to provide funds for transactions with the Debtors. The Trustee does not allege that the

LLC Member Defendants had any discretion, authority or management responsibility with regard

3

to any of the transactions undertaken by the AUG Entities. The Trustee does not allege that any money ever changed hands between the Debtors and any of the LLC Member Defendants. Indeed, the Trustee does not allege that any of the LLC Member Defendants had any direct dealings or communications whatsoever with the Debtors, nor that any of the LLC Member Defendants had any ability to control or direct funds provided to or received by the AUG Entities. The only parties alleged to have any direct dealings or communications with the Debtors are the AUG Entities themselves, Mr. Stein, and their lawyer, Carl Santangelo.  The only persons alleged to have control over the funds allegedly transferred by the Debtors are Mr. Stein and Mr. Santangelo, the attorney for the AUG Entities.

Nonetheless, the Trustee's Complaint attempts to assert claims against the LLC Member Defendants as the purported initial transferees of allegedly fraudulent transfers by the Debtors, or alternatively that transfers were made "for the benefit of" the LLC Member Defendants, were made to the LLC Member Defendants "through the mere conduits" of the AUG Entities, or were made "as part of an overall scheme which the Court should collapse under applicable law." The Complaint provides no factual support for any such claims. Moreover, the Complaint fails to establish the Trustee's standing to pursue claims under the Florida Limited Liability Company Act, and fails to establish the required elements of any such claim.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Allegations that are mere boilerplate recitations of a cause of action supported by conclusory assumptions are not "factual"

4

such that they are entitled to an assumption of truth; rather, the court must only give all "well-pleaded factual allegations" an assumption of veracity and determine whether, together, they plausibly give rise to an entitlement to relief. Iqbal. 129 S.Ct. at 1950. The complaint must contain sufficient factual content to allow the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," and in doing so, the reviewing court should "draw on its judicial experience and common sense." Id.

## DISCUSSION

The Trustee's Complaint takes a number of routes in attempting to characterize the LLC Member Defendants as initial transferees of transfers from the Debtors. The reason for these convolutions ought to be self-evident: to attempt to preclude the LLC Member Defendants from relying on their good faith as a defense to the Trustee's avoidance claims under 11 U.S.C. § 550(a)(2). These convolutions are inconsistent with and unsupported by the factual allegations in the Complaint, and accordingly should be dismissed for failure to state a cause of action.

### A.    The LLC Member Defendants are Not Initial Transferees

The Trustee's Complaint – perhaps deliberately – obfuscates the question of which of the defendants are being sued as initial transferees and which are being sued as subsequent transferees. Rather than stating claims for avoidance of certain transfers and recovery of the transfers separately, the Trustee has bundled them all together in one big hodge-podge. For example, Count I of the Complaint asserts a claim for avoidance and recovery of preferential transfers under 11 U.S.C. § 547. It generically asserts that "Between August 20, 2009 and September 2, 2009, the Debtors made transfers as set forth on Schedule K to the AUG Defendants and the AUG II Defendants (the "AUG LLCs' Preferential Transfers")." ¶ 144. "AUG Defendants" and "AUG II Defendants" are defined to include AUG LLC and AUG II

5

LLC themselves, the entity's general managers, as well as each of the LLC Member Defendants who were members of each of the respective entities. ¶ 99. Schedule K contains a list of more than 100 discrete transactions supposedly received by each of the defendants.

In the final allegation of Count I, the Trustee – without distinguishing among the various defendants – seeks to avoid and recover all of the transfers because they were made "directly to the AUG Defendants and AUG II Defendants." ¶ 151. The first problem is that it is unclear what relief the Trustee seeks, and against whom. Is the Trustee seeking to avoid all of the transfers in Schedule K and to recover each transfer from each of the Defendants? Assuming – though it is not stated – that the Trustee only seeks to recover from each Defendant the amounts listed as having been transferred to that particular Defendant, what is the factual basis for characterizing the LLC Member Defendants as the initial transferees of those transfers?

In fact, the Trustee's boilerplate recitation of "initial transferee" liability in Count I is expressly belied by the factual contentions that precede it in the Trustee's Complaint. Specifically, Paragraph 140 describes the sequence of transactions as follows:

> [B]etween August 20, 2009 and September 2, 2009, Goldberg transferred a total of $9,978,976 to the Santangelo Trust Account, representing a capital repayment of $5,184,800 to the AUG Defendants, a capital re-payment of $3,725,000.00 to the AUG II Defendants and "profits" and fees of $622,000.00 to the AUG Defendants and "profits" and fees of $447,000 to the AUG II Defendants. Attorney Santangelo immediately distributed the "profits" and fees, but did not return the defendants' capital until September 10, 2009.[2]

---

[2] This description highlights a fundamental defect in the Trustee's Complaint. Though the Trustee has attached a number of schedules which the Trustee describes as reflecting transfers by the Debtors to the LLC Member Defendants, the Trustee knows full well that there never were any such transfers. The Debtors never issued a single check or other payment to any of the LLC Member Defendants, and in fact, likely did not even know who they were. All of the transactions occurred between the Debtors and the AUG Entities, and all monies were deposited to the Santangelo Trust Account on behalf of the AUG Entities.

The Trustee alleges that the "Santangelo Trust Account" was an account established by Mr. Stein's lawyer, Carl Santangelo, which received monies provided by the LLC Member Defendants to the AUG Entities and which was to receive the repayment on the AUG Entities' transactions with Goldberg. Complaint, ¶ 98, 106-108. There is no allegation that Mr. Santangelo was the lawyer for the individual LLC Member Defendants, that they directed him to establish the Santangelo Trust Account, or that they controlled disbursements to or from the Santangelo Trust Account.

The Trustee's own Complaint clearly describes two sets of transactions: the transfer of funds from Goldberg to the Santangelo Trust Account, and the subsequent disbursement of those funds from by Attorney Santangelo to the LLC Member Defendants. ¶ 140. Under the standard set forth in Iqbal and Twombly, as described above, the Trustee's conclusory allegations that the LLC Member Defendants are initial transferees of the transfers at issue are subject to no presumption of validity; and the factual allegations actually included in the Complaint belie and contradict the conclusory assertion that the LLC Member Defendants were initial transferees from the Debtors.

Counts II (11 U.S.C. § 548(a)(1)(A) actual fraud), III (11 U.S.C. § 548(a)(1)(B) constructive fraud), IV (CUFTA actual fraud), and V (CUFTA constructive fraud) follow the same exact pattern. The Trustee relies upon schedules of transfers without any factual explanation of how or why the LLC Member Defendants are the initial transferees of those funds, which pursuant to the Trustee's own allegations, were not transferred by Goldberg to the LLC Member Defendants, but rather to the Santangelo Trust Account established by the AUG Entities.

Accordingly, the claims against the LLC Member Defendants as "initial transferees" in each of Counts I – V should be dismissed for failure to state a cause of action.

**B.      The LLC Member Defendants are Not the Entities for Whose Benefit Transfers Were Made**

In Counts I – V the Trustee also asserts, in similarly conclusory fashion unsupported by any specific facts, that transfers were made to the AUG Entities "for the benefit of the AUG Defendants and the AUG II Defendants"[3] This conclusory allegation is similarly undermined by the more specific description of the transactions contained in the Complaint, pursuant to which monies were transferred by Goldberg to the AUG Entities and then disbursed, through the Santangelo Trust Account, to the LLC Member Defendants. Case law consistently has held that a subsequent transferee, whose liability and potential defenses are determined under 11 U.S.C. § 550(a)(2) and (b), cannot also be the entity for whose benefit a transfer was made, as that phrase is used in 11 U.S.C. § 550(a)(1). *See* Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.), 892 F.2d 26, 29 (4th Cir. 2002) ("a subsequent transferee cannot be the 'entity for whose benefit' the original transfer was made"); *see also* Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 895 (7th Cir. 1988). The typical entity for whose benefit a transfer was made is a guarantor – someone who receives the benefit, but not the money. Bonded, 838 F.2d at 895.

Under § 550(a), as interpreted by relevant applicable authorities, and the facts alleged in the Trustee's Complaint, the LLC Member Defendants cannot be the "entities for whose benefit" the alleged avoidable transfers were made, and accordingly the claims for recovery from the LLC Member Defendants as the entities for whose benefit the transfers were made under § 550(a)(1) in Counts I – V should be dismissed for failure to state a cause of action.

---

[3] This is a confusing and circular allegation, since the Trustee's definition of "AUG Defendants" and "AUG II Defendants" includes the AUG Entities themselves. ¶ 99.

C.      **The AUG Entities are Not Mere Conduits**

The Trustee takes still another tack in Counts I – V to characterize the LLC Member

Defendants as initial transferees, contending that the alleged transfers were made "to the AUG

Defendants and the AUG II Defendants through the mere conduits of AUG and AUG II

respectively"[4] (¶ 151, 157, 163, 168, 175). Once again, the Trustee's Complaint fails to contain

factual allegations that would support such a claim.

Generally speaking, 11 U.S.C. § 550 allows avoidable transfers to be recouped from

initial transferees, subsequent transferees, or the entities for whose benefit such transfers were

made. 11 U.S.C. § 550(a); *see also* Christy v. Alexander & Alexander of New York (In re

Finley), 130 F.3d 52, 56 (2d Cir. 1997); Paloian v. LaSalle Bank, N.A., 619 F.3d 688, 691 (7th

Cir. 2010). But the Trustee's claims against an initial transferee and a subsequent transferee are

very different, since subsequent transferees are entitled to assert the defenses under 11 U.S.C. §

550(b) that they took any transfers for value, in good faith, and without knowledge of the

voidability of the transfer.

The term "initial transferee" is not defined in the Bankruptcy Code, and some courts have

recognized a "mere conduit" theory under which, in certain circumstances, an entity that is the

nominal initial recipient of a transfer from a debtor will nonetheless be deemed a "mere conduit"

for the transfer of the property to another entity, which should be deemed the "initial transferee."

*See* Christy; Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890 (7th Cir. 1988). The

genesis of the "mere conduit" defense was to protect parties who may have been the nominal

recipients of funds from a debtor, but who did not have any substantive rights to the funds and

---

[4] Once again, the Trustee's allegation is confusing and circular, since the Trustee's definitions of
"AUG Defendants" and "AUG II Defendants" include AUG LLC and AUG II LLC.
Accordingly, the Trustee's allegations as pled are that the AUG Entities are both the mere
conduits and the initial transferees.

9

were acting as mere commercial conduits. In certain circumstances, these mere conduits would be shielded from liability as an initial transferee. In order to incur liability as an initial transferee under a conduit theory, a party must have exercised dominion and control over the property transferred; stated another way, the party must have had the right to put the money to one's own purposes. Christy, 150 F.3d at 496.

Thus, in Christy, an insurance broker, who had no discretion or authority to do anything other than transmit premium funds from the policyholder to the insurer, was not the "initial transferee" of funds from the policyholder debtor but was a "mere conduit." Likewise in Bonded, when a debtor transferred money to a checking account of the bank's customer, the initial transferee was the bank's customer, who possessed control over the funds, rather than the bank which merely held the money subject to its customer's orders.  Most typically, when an entity does not deal directly with the debtor but acts only as an innocent conduit of funds in a commercial transaction, that party will be deemed a "mere conduit" and not an initial transferee for purposes of §550(a).  See Glazer v. D'Antona (In re The Cassandra Group), 312 B.R. 491, 496 (Bankr. S.D.N.Y. 2004) (citations omitted) (attorney who paid himself out of funds received from debtor, but maintained in client's trust account, held not to be initial transferee because the funds were held for the benefit of his client and the client was the initial transferee).

On the other hand, an entity that receives money for use in paying down a loan, or passing money to investors in a pool, is an "initial transferee" even though the recipient is obliged by contract to apply the funds according to a formula.  Paloian v. LaSalle Bank, N.A., 619 F.3d 688, 691 (7th Cir. 2010) (trustee for securitized investment pool was an initial transferee and not mere conduit for payments received from the debtor); see also Alexander v. J. Martin & Assocs (In re Terry Mfg., Co.), 363 B.R. 233 (Bankr. M.D. Fla. 2007) (mere fact that

one is bound to pay another person does not make him a conduit).  Furthermore, when a creditor

receives money from its debtor to pay a debt, the creditor is not a mere conduit.  Lowry v. Sec.

Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.), 892 F.2d 26 (4th Cir. 1989); *see also*

Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.2d 588 (11th Cir. 1990).

        The Trustee's attempt to apply the "mere conduit" theory here is very similar to that

recently rejected in Paloian. There, LaSalle bank, as the trustee of a securities pool, argued that it

was a "mere conduit" rather than the initial transferee of funds paid by the debtor, because it was

simply a conduit for placing money in the trust for the benefit of its investors. Writing for the

court, Judge Easterbrook (who also wrote the Bonded decision) concluded that the bank, even

though it had duties to the trust's beneficiaries concerning the application of funds, was

nonetheless the owner of the funds and the initial transferee for purposes of a preference action.

619 F.3d at 691-92. Similarly here, the AUG Entities, as the entities which dealt with the

Debtors, were the initial transferees of funds received from the Debtors, even if they had duties

under their agreements with the LLC Member Defendants with respect to the application of those

funds.

        In cases in which the initial recipient was disregarded as a "mere conduit," the key fact

that led to the court's disregard of that recipient was typically that the final recipient exercised

control and domination over the nominal first recipient. *See* In re CNB Int'l, Inc., 393 B.R. 306,

328 (Bankr. W.D.N.Y. 2008). The Trustee does not allege that the LLC Member Defendants

exercised, or had the ability to exercise, any dominion or control over the transactions between

the AUG Entities and the Debtors. The Trustee does not allege that the LLC Member Defendants

demanded, or had the ability to demand, any payments directly from the Debtors. The Trustee

does not allege that the LLC Member Defendants directed, or had the ability to direct, how the

funds held by AUG Entities, and paid to the AUG Entities, were to be utilized. The Trustee does not allege that the LLC Member Defendants directed or controlled any of the transfers alleged to have occurred in Schedules J and K of the Complaint. Ironically, the parties who the Trustee seeks to characterize as the "initial transferees" here – the LLC Member Defendants – are the only ones who had absolutely no control or discretion over the funds at issue.

The origin of the conduit theory is the desire to protect the "mere conduit," not to expand the trustee's avoidance powers. <u>Ragsdale v. South Fulton Machine Works, Inc. (In re Whitacre Sunbelt, Inc.)</u>, 200 B.R. 422 (Bankr. N.D. Ga. 1996). The application of the "mere conduit" theory here would be an unprecedented expansion of the Trustee's avoidance powers and disregard the difference between initial and subsequent transferees, and would not serve to protect an innocent pass-through entity from an unfair liability. Accordingly, the portions of Counts I – V that seek recovery from the LLC Member Defendants on the basis that transfers were made to them "through the mere conduits" of the AUG Entities should be dismissed for failure to state a claim.

**D.     The Transactions Were Not Part of an Overall Scheme Which Should be Collapsed**

The Trustee makes still another attempt at circumventing the LLC Member Defendants' right to assert §550(a)(2) defenses by contending, in the concluding paragraphs of each of Counts I – V, that the transfers were made "as part of an overall scheme which the Court should collapse under applicable law and treat the AUG Defendants and the AUG II Defendants as initial transferees of the AUG LLCs' Two Year Transfers." (¶ 151, 157, 163, 168, 175). This conclusory allegation is similarly lacking in factual or legal support in the Trustee's Complaint.

It appears that this conclusory allegation is derived from a line of cases indicating that "multilateral transactions may under appropriate circumstances be 'collapsed' and treated as

phases of a single transaction for analysis" under fraudulent transfer statutes. <u>HBE Leasing Corp. v. Frank</u>, 48 F.3d 623, 635 (2d Cir. 1995). As indicated in <u>HBE</u>, the principle is most typically applied in leveraged buy-out scenarios: "one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the consideration, while the debtor retains nothing." <u>Id.</u> The question then becomes whether the two transactions can be "collapsed" such that the fraudulent consequences can be visited upon the initial transferee.

Courts have held that two conditions must be satisfied in order to "collapse" transactions in this manner: first, the consideration received by the first transferee "must be reconveyed by the debtor for less than fair consideration or with an actual intent to defraud creditors;" and second, the transferee against whom recovery is sought must have "actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent." <u>Id.</u>; *see also* <u>Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)</u>, ___ B.R. ___, 2011 WL 309583, *10 (Bankr. S.D.N.Y. 2011).

It should be readily apparent that: (1) this line of cases has no bearing on the particular circumstances here, where the Trustee does not seek to "collapse" transactions in which one party gave value to the debtor and another party ultimately received the value, but rather simply seeks to disregard the provisions of § 550 and CUFTA distinguishing between initial and subsequent transferees; and (2) even if the theory had any application here, the Trustee has not alleged any facts to support it.

Setting aside the awkwardness of applying this body of law to these particular circumstances, the cases are clear that in order to "collapse" the transactions, the party seeking to

do so must establish that the party it seeks to designate as the initial transferee must have knowledge of "the ***entire scheme*** that renders the exchange with the debtor fraudulent." Fabrikant, 2011 WL 309583 at *11, citing HBE (emphasis added). Moreover, "[t]he court must examine the knowledge of ***each participant separately***." Id. (emphasis added). The cases set a high threshold for the degree of knowledge that the transferee must possess. The courts focus on knowledge "that no transaction would occur unless all of the other transactions occurred." Id. Actual knowledge "has been found to exist where the initial transferor was intimately involved in the formulation or implementation of the plan" by which assets were channeled to a third party, whereas constructive knowledge could be found "where the initial transferee became aware of circumstances that should have led it to inquire further into the circumstances of the transaction, but failed to make inquiry." Id. at *11-12(citations omitted). Knowledge of insolvency, however, "is insufficient to support a claim of bad faith." Id.

The difficulties of meeting that burden are demonstrated by the Fabrikant case, where after four years and multiple amendments of the complaint, the court finally dismissed the claims *with* prejudice, without leave to further amend. The complaint failed in part because it did not allege that the defendants "participated in the formulation of the Scheme or were intimately involved in its planning or execution." Id. at *16. Moreover with respect to constructive knowledge, the Court found that it "must focus on knowledge relating to the transfer at issue, and not on knowledge that the transferor (i.e., the debtors) was engaged generally in fraudulent activity," and that it was implausible to suggest that the transferees knew or should have known that the proceeds of the particular advances they made would be fraudulently transferred to a third party. Id.

14

The "collapsing" cases have no applicability here. They were intended to apply in circumstances such as LBO transactions. Even if they did apply here, the Trustee does not allege the necessary elements of such a claim, including that each of the LLC Member Defendants had knowledge of the entire purported scheme of the Debtors that renders any transaction allegedly fraudulent. Accordingly, the portions of Counts I – V that seek recovery on the basis that transfers to the LLC Member Defendants were made "as part of an overall scheme which the Court should collapse" should be dismissed for failure to state a claim.

### E.    The Trustee Lacks Standing to Pursue Claims Against The LLC Member Defendants Under the Florida Limited Liability Company Act.

In Counts VI and VII, the Trustee seeks to hold the LLC Member Defendants liable to the Goldberg bankruptcy estate under Florida's limited liability company statute, Florida Statutes Chapter 608, specifically the equity member distribution statutes, Fla. Stat. §§ 608.426 and 608.428.  These counts seek to require the LLC Member Defendants to repay whatever the members received in distributions from the AUG Entities upon their LLC interests.  Based on the allegations in the charts attached to the Complaint, this liability would total nearly the entirety of the approximately $11,000,000 the AUG Entities allegedly received from the Debtors in 2009.

The first statute merely provides that "no distribution may be made if after the distribution the limited liability company would be insolvent," Fla. Stat. §608.426(1), and gives a remedy against managers who vote for a distribution by an insolvent LLC to its members:

> A manager or managing member who votes for or assents to a distribution made in violation of this section, the articles of incorporation, or the operating agreement, is personally liable to the limited liability company for the amount of the distribution that exceeds what could have been distributed without such violation if it is established that the manager or managing member did not perform the manager's or managing member's duties in compliance with s. 608.4225. In any proceeding commenced under this section, a manager or managing member has all of the defenses ordinarily available to a manager or managing member.

15

Fla. Stat. §608.426(3).  By the plain language of the statute, only the LLC itself has the right to enforce the statute.

The second statute cited does provide a cause of action against LLC members who receive distributions on equity from an insolvent LLC, but also gives standing only to the LLC:

> (1)     If a member receives a distribution in violation of the articles of organization, the operating agreement, or this chapter, the member is liable to the limited liability company for a period of 3 years thereafter for the amount of the distribution wrongfully made.
>
> (2)     A member may not receive a distribution from a limited liability company to the extent that, after giving effect to the distribution, the limited liability company would be insolvent.

Fla. Stat. §608.428.

The Trustee cites a Colorado case, Colborne Corporation v. Weinstein, 2010 WL 185416 (Colo. App. Jan. 21, 2010), cert. granted, 2010 WL 3213046  (Colo. Aug. 16, 2010).  The trial judge held that creditors of an insolvent LLC may not act on behalf of the LLC.  The appellate court reversed, citing only to purportedly analogous case law under the Corporations Act.  The Colorado Supreme Court presently has the issue under consideration, but has not ruled.

The only decision interpreting the statute in Florida is Lindberg v. Crowley Group, LLC, 2008 WL 7600831 (Fla. Cir. Ct. Oct. 31, 2008), where the court held that a defendant, who sought to recover against an LLC manager who authorized distributions to equity members, does not have standing to enforce §608.426:

> Here, Chapter 608 does not expressly provide a civil cause of action.  Further, this Court finds that the class of individuals Chapter 608 sought to protect were members of a limited liability company, not the public.  Finally, the legislative intent would appear not to create a private cause of action for individuals to seek damages against a limited liability company for internal procedures and duties of members to one another.

Id.

16

The Florida decision is consistent with *non-uniform* provisions in the Florida business entities laws, provisions that are not present in the Colorado law.  Prior to 1989, a Florida court held that a creditor had standing to bring actions against directors of insolvent corporations for breaches of fiduciary duties that normally ran to the company itself.  *See* Arnowitz v. Equitable Life Assurance Society of the United States, 539 So. 2d 605 (Fla. 3d DCA 1989).   After the Arnowitz decision, the Florida legislature amended both its Corporations Act and its Limited Liability Company to prohibit anyone other than a stockholder from enforcing causes of action belonging to the company. Fla. Stat. §607.07401(a) (corporations); §608.601 (limited liability companies).

The Lindberg case also finds support in a recent decision of the Delaware Court of Chancery, CML V, LLC v. Box, 6 A.3d 238 (Del. Ch. 2010). In CML, the court was asked to determine whether an LLC's creditors may bring a derivative action against the LLC. The plain language of Del. Code Ann., Tit. 6, §§18-1001 and 1002 limits standing to bring a derivative claim to holders of membership interests in an LLC and their assignees. *See* id. at 239. However, under Delaware common law, the creditors of an insolvent *corporation* have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. Id. at 240 (emphasis added). Furthermore, Delaware's corporations statute has long provided that a creditor of an insolvent corporation has standing to sue directors of the corporation personally when the directors authorize a distribution to stockholders. Del. Code Ann. Tit. 8, §174 (1953).   The question presented in CML was whether any equitable considerations entitle creditors to sue derivatively on behalf of an insolvent *LLC* in the absence of a specific statutory provision authorizing creditor suits. Id. at 241.   The Delaware court held that they do not.

17

The court in <u>CML</u> found "nothing absurd about different legal principles applying to corporations and LLCs. 'Because the conceptual underpinnings of the corporation law and Delaware's [alternative entity] law are different, courts should be wary of uncritically importing requirements from the [Delaware General Corporation Law] into the [alternative entity] context.'" <u>Id.</u> at 249-250, citing <u>Twin Bridges Ltd. Partnership v. Draper</u>, 2007 WL 2744609, *19 (Del. Ch. Sept. 14, 2007). The court also found that barring creditor derivative standing under the LLC act did not conflict with the overarching purpose or structure of the Delaware LLC act. Citing <u>Del. Code Ann.</u> Tit. 6, §18-1101(b), the court explained that the Delaware LLC act expressly provides that its policy is to give the maximum effect to the principles of freedom of contract and to the enforceability of LLC agreements. *See* <u>id.</u> at 250. Thus, the court concluded, LLCs are creatures of contract designed to afford the maximum amount of freedom of contract, private ordering and flexibility of the parties involved. <u>Id.</u>

Thus in the absence of any specific contractual or statutory provision giving rights or remedies to creditors, the Delaware court found that creditors of a limited liability company lacked standing to pursue derivative claims on behalf of the LLC against members of the LLC. By the same token, here, the Trustee, as a putative creditor of the AUG Entities, lacks standing to enforce the Florida Limited Liability Company Act "wrongful distribution" statutes against the LLC Member Defendants, and Counts VI and VII should be dismissed for failure to state a cause of action against the LLC Member Defendants.

**F.     The Complaint Fails to Allege the AUG Entities Were Insolvent at the Time of Any Transfers to the LLC Member Defendants**

Even if the Trustee had standing to assert claims under the Florida Limited Liability Company "wrongful distribution" statutes, the Complaint does not allege sufficient facts to establish any such claims. One of the elements of any such claim is that the LLC was insolvent at

18

the time of the distribution or was rendered insolvent by the distribution. See <u>Fla. Stat.</u> §
608.426(1) ("no distribution may be made if after the distribution, the limited liability company
would be insolvent"). Counts VI and VII do not factually support the contention that the AUG
Entities were insolvent or rendered insolvent at the time of any distributions to the LLC Member
Defendants.

To the contrary, the Complaint only alleges that "between August 24, 2009 and
September 10, 2009, Robert Stein caused AUG [and AUG II] to distribute to the AUG
Defendants [and the AUG II Defendants] the amounts set forth on **Schedule L [and M]**. After
this distribution AUG [and AUG II] *had no assets and was therefore rendered insolvent by such
distribution*." ¶ 177, 185 (emphasis added). However, the Complaint does not identify any
liabilities which the AUG Entities had at the time of making such alleged distributions.

"Insolvent," for purposes of the Florida Limited Liability Company Act, is defined as:

> the inability of a limited liability company to pay the limited liability company's
> debts as they become due in the ordinary course of business or that the fair value
> of the limited liability company's total assets would be less than the sum of its
> total liabilities plus the amount that would be needed, if the limited liability
> company were to be dissolved and terminated at the time of the distribution, to
> satisfy the preferential distribution rights of the limited liability company's
> members accrued through such dissolution and termination.

<u>Fla. Stat.</u> § 608.402(14). The Trustee has not alleged that the AUG Entities – at the time they
made the alleged distributions to the LLC Member Defendants – were unable to pay their debts
as they became due in the ordinary course of business of the AUG Entities. Nor has the Trustee
alleged that the fair value of the AUG Entities assets was less than the sum of its total liabilities
at the time the alleged distributions were made. The mere allegation that the AUG Entities had
no assets after making the distributions, even if accepted as true, does not establish that they

19

were rendered insolvent thereby, in the absence of any liabilities extant at the time of the distributions.

The Trustee has failed to allege that the AUG Entities were insolvent at the time of the distributions alleged in Counts VI and VII of the Complaint, and therefore those Counts should be dismissed for failure to state a cause of action.

### G.   The Complaint Contains Improper Narrative

The first four pages of the Trustee's Complaint consist of a lengthy, unnumbered exposition, long on argument, innuendo and speculation, but short on specific facts. The narrative violates the requirements of Fed.R.Civ.P. 10(b), as incorporated by Fed.R.Bankr.P. 7010, which states that "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." The court should strike the Trustee's narrative which precedes the numbered allegations in the Complaint pursuant to Fed.R.Civ.P. 12(f), as incorporated by Fed.R.Bankr.P. 7012, or alternatively direct the Trustee to plead such matters in conformity with Rule 10(b). *See* Baum v. Union Pac. R. Co., 9 F.R.D. 540, 541 (W.D. Mo. 1949).

### H.   The Complaint Fails to Allege a Basis for an Injunction or Attorney's Fees

In the conclusion of the Complaint, the Trustee requests that the Court enter a permanent injunction against all defendants from transferring or disposing from [sic] any assets during the pendency of this bankruptcy case, and also makes a request for attorney's fees. The Trustee has not plead any facts or set forth any count which would establish an entitlement to injunctive relief, and accordingly this request should be stricken.

Moreover, generally speaking, a party is not entitled to an award of attorney's fees unless there is a contractual or statutory provision authorizing them. Fleischmann Distilling Corp. v.

Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), superseded by statute on other grounds. There is no such entitlement in a fraudulent conveyance action. *See* In re Lexington Healthcare Group, Inc., 339 B.R. 570, 578 (Bankr. D. Del. 2006). Accordingly, absent the pleading of a proper basis for attorney's fees, such a demand should be stricken. See In re Carter, 411 B.R. 730, 742 Bankr. M.D. Fla. 2009); *compare* Lexington (attorney's fee claim only survived because of potential contractual basis). The Trustee has not alleged any statutory or contractual basis for attorney's fees, and so this request should likewise be stricken. *See, e.g.*, In re MTBE Products Liability Litigation, 402 F.Supp.2d 434, 442 (S.D.N.Y. 2005).

## CONCLUSION

For the foregoing reasons, the LLC Member Defendants respectfully submit that all of the claims asserted against then in Counts I – V (other than as subsequent transferees of transfers made to the AUG Entities), Counts VI, VII and VIII should be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed.R.Bankr.P. 7012, for failure to state a cause of action.

Dated: April 6, 2011
New Haven, Connecticut

/s/ Ilan Markus
Ilan Markus, Esq. (CT26345)
LeClairRyan, a Professional Corporation
545 Long Wharf Drive, 9th Floor
New Haven, Connecticut  06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
Email: ilan.markus@leclairryan.com

Counsel for the LLC Member Defendants

- and -

21

David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, P.A.[5]
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

- and -

Patrick S. Scott, Esq.
GrayRobinson, P.A.[6]
401 East Las Olas Boulevard, Suite 1850
P.O. Box 2328 (33303-9998)
Fort Lauderdale, Florida 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112

---

[5] Counsel for Nancy Adelis, Thomas Almy, Baystate Capital, LLC, Edward B. Caudill, Jeffrey Chizmas, Stuart J. Cohen, individually and as beneficiary of Stuart Cohen IRA, B. James Doerksen, Kirk Elyakin, Marilyn Elyakin, Robert H. Fier, Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Financial Security Services Defined Benefit Plan, Financial Security Services, LLC, Barry Gorsun, Deborah Yalowitz Haile, Howard McDonald Haile, Debra Hoffman, as Trustee of Hoffman Family Trust, Robert Jerome, Jill S. Kadingo, Richard M. Kadingo, Jess Kravitz, Jason Lieblich, Marcus Family Partnership, Steven E. Marcus, as General Partner of Marcus Family Partnership, Jay Marmer, individually and as Trustee of Marmer Family Trust, and as Trustee of Financial Security Services Defined Benefit Plan, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Jeremy Marmer, Joshua Marmer, Mark Marmer, Shirley Marmer, Stefani J. Marmer, individually and as Trustee of Marmer Family Trust, Tovah Marmer, Mark Moskowitz, as Trustee of Cat's Paw Trust, Elliot D. Pollack, as Beneficiary, Administrator, Manager of Trustee of Property Administration Specialists Inc. 401(k) Plan for the Benefit of Elliot D. Pollack, Property Administration Specialists 401(k) Plan for the Benefit of Mr. Elliot D. Pollack, Sidney Richman, N. Louis Shipley, Strategem Associates, Inc., and Jeffrey Webster.

[6] Counsel for Dixie Plumbing Service, Inc., Haley Family Limited Partnership, Hyatt Family Limited Partnership, Gilbert E. Hyatt, III, as General Partner of Hyatt Family Limited Partnership, and as General Partner of Haley Family Limited Partnership, and Gilbert E. Hyatt, IV.

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2011, a copy of the above filing was served (i) electronically via Notice of Electronic Filing for parties or counsel who are registered Filers through the Court's ECF system and via U.S. Mail on the parties listed below.

U.S. Trustee
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT  065l0

Dated:  April 6, 2011               **LECLAIRRYAN, a Professional Corporation**
New Haven, Connecticut

By:/s/  Ilan Markus _____
Ilan Markus, Esq.        ct26345
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut 06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
ilan.markus@leclairryan.com

23