UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | |
|---|---|
| IN RE | |
| MICHAEL S. GOLDBERG, LLC<br>MICHAEL S. GOLDBERG, | CASE NO. 09-23370 (ASD)<br>09-23371 (ASD) |
| Debtors. | CHAPTER 7 |
| | Jointly Administered Under<br>Case No.     09-23370 |
| JAMES BERMAN, Chapter 7 Trustee for the<br>Estates of MICHAEL S. GOLDBERG, LLC<br>and MICHAEL S. GOLDBERG, | ADV. NO.    11-2013 |
| Plaintiff, | |
| vs. | |
| AUG LLC, et al., | May 11, 2011 |
| Defendants. | |

**AMENDED MOTION TO DISMISS COMPLAINT
AGAINST AUG PARTNERS, LLC, ROBERT STEIN, AND ELAINE STEIN**

Defendants AUG PARTNERS LLC, ROBERT STEIN, individually and as Trustee of the

Robert Stein 1992 Revocable Trust, ELAINE STEIN, individually and as Trustee of the Elaine

1

Stein 1992 Revocable Trust and as Successor Trustee of The Paul Slayton Trust, move to dismiss the Plaintiff's claims for relief for failure to state a claim upon which relief can be granted, and in support thereof would show the Court as follows:

## GROUNDS FOR DISMISSAL AND JOINDER

1. Plaintiff improperly seeks relief against movants as initial transferees.

2. Plaintiff improperly asserts avoidance claims under Connecticut Law (Fourth and Fifth Claims for Relief under CUFTA) to recover transfers which occurred in Florida and to which Florida law would apply.

3. Plaintiff lacks standing to bring his Sixth and Seventh Claim for Relief to recover Illegal Member Distributions under Florida Law and such claims for relief likewise fail to allege sufficient facts to state a claim on which relief can be granted.

4. Lastly, Plaintiff improperly asserts an unjust enrichment claim without proper allegations or legal support.

5. The motion to dismiss filed by the "LLC Members" (Doc. 134) seeks dismissal on grounds applicable and similar to the grounds asserted by the instant movants. Accordingly, the moving defendants hereto join, incorporate, and adopt such arguments and legal authority as if set forth fully herein.

I.  **Avoidance Claims against Subsequent Transferees**

The factual allegations (as opposed to legal theories or conclusions) of the Complaint allege that the only initial transferees of the Debtor were AUG LLC and AUG II LLC ("AUG LLCs"). Each and every named defendant other than the AUG LLCs are alleged to have received subsequent transfers from the AUG LLCs. However, Plaintiff's avoidance claims ignore this pleaded fact, and request relief from all defendants as initial transferees and seek to disregard any defenses held by a subsequent transferee under both the Title 11 claims and state law.[1] Plaintiff seeks such relief on the legally deficient bases that 1) the AUG LLCs are mere conduits; 2) the subsequent transferees are parties for the benefit of whom the transfers were made; or 3) the Court should "collapse" the transaction.

A. **The Non-AUG LLC defendants are not initial transferees**

Putting aside the requests for relief and the actual factual allegations of the Complaint describing the transfers demonstrate that, other than the AUG LLCs, the defendants did not receive transfers from the Debtors. Instead, they are alleged to be the recipients of a second set of transfers from the AUG LLCs. The defendants (other than the AUG LLCs) are the text book subsequent

---

[1] Plaintiff alleges that defendants are alternatively subsequent transferees who did not take for value and in good faith. Movants believe that such factual determination is not the subject of a motion to dismiss, but nonetheless deny such allegations, and have concurrently filed an answer and defenses.

transferees and, in some cases, the defendants actually received the transfers from the subsequent transferees.

As noted by the "LLC Member Defendants" motion to dismiss (Doc. 134), "The Trustee's own Complaint clearly describes two sets of transactions: the transfer of funds from Goldberg to the Santangelo Trust Account, and the subsequent disbursement of those funds from by Attorney Santangelo to the LLC Member Defendants. 140. Under the pleading standard set forth by the Supreme Court in *Iqbal* and *Twombly*,…the Trustee's conclusory allegations that the LLC Member Defendants are initial transferees of the transfers at issue are subject to no presumption of validity; and the factual allegations actually included in the Complaint belie and contradict the conclusory assertion that the LLC Member Defendants were initial transferees from the Debtors." *Ashcroft v. Iqbal*, U.S. , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct, 1955, 167 L.Ed.2d 929 (2007).

However, the facts of the complaint do not support initial transferee claims against the non-AUG LLC defendants and such claims should be dismissed.

The Trustee alleges:

[B]etween August 20, 2009 and September 2, 2009, Goldberg transferred a total of $9,978,976 to the Santangelo Trust Account, representing a capital repayment of $5,184,800 to the AUG Defendants, a capital re-payment of $3,725,000.00 to the AUG II Defendants and "profits" and fees of $622,000.00 to the AUG

Defendants and "profits" and fees of $447,000 to the AUG II Defendants. Attorney Santangelo immediately distributed the "profits" and fees, but did not return the defendants' capital until September 10, 2009.

Despite alleging that the AUG LLCs were the ONLY defendants to have received transfers from the Debtors, the Plaintiff nonetheless attaches schedules which purport to reflect transfers by the Debtors to the defendants. There is no dispute that the Debtor only transferred funds to the AUG LLCs and that the funds received by the other defendants was a subsequent transfer of the funds from the AUG LLCs.

To the extent that the Plaintiff seeks to avoid the subsequent transfers to defendants, then he must do so within the legal confines and remedies afforded to such claims as well as the potential defenses which the Bankruptcy Code and applicable state law afford to such subsequent transfers.

### B. The AUG LLCs were not "mere conduits"

The Trustee's next attempt to put a square peg in the round hole is the request to deem the AUG LLCs to be "mere conduits". However, as with the other theories put forth to support initial transferee liability, the "mere conduit" theory does not apply in this case and contravened by the allegations of the complaint.

The "mere conduit" theory was developed by Courts as a defensive theory to protect parties who were simply nominal recipients of funds by who had no substantive rights or control over the funds. *See Christy v, Alexander & Alexander of New York (In re Finley),* 130 F.3d 52, 56 (2d

5

Cir. 1997); *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988). In order to incur liability as an initial transferee under a conduit theory, a party must have exercised dominion and control over the property transferred; stated another way, the party must have had the right to put the money to one's own purposes. *Christy*, 150 F.3d at 496.

When an entity does not deal directly with the debtor but instead acts as only a nominal holder and conduit of funds in a commercial transaction, that party will be deemed a "mere conduit" and not an initial transferee for purposes of §550(a). *See e.g. Glazer v. D'Antona (In re The Cassandra Group)*, 312 B.R. 491, 496 (Bankr. S.D.N.Y. 2004) (citations omitted) (attorney who paid himself out of funds received from debtor, but maintained in client's trust account, held not to be initial transferee because the funds were held for the benefit of his client and the client was the initial transferee).

On the other hand, an entity that receives money for use in paying down a loan, or passing money to investors in a pool, is an "initial transferee" even though the recipient is obliged by contract to apply the funds in a designated manner. *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 691 (7th Cir. 2010) (trustee for securitized investment pool was an initial transferee and not mere conduit for payments received from the debtor); *see also Alexander v. J. Martin & Assocs (In re Terry Mfg., Co.)*, 363 B.R. 233 (Bankr. M.D. Fla. 2007) (mere fact that one is bound to pay another person does not make him a conduit).

The application of the "mere conduit" theory here is factually similar to the circumstances of *Paloian* in which the court rejected the theory. In *Paloian,* LaSalle bank, as the trustee of a securities pool, argued that it was a "mere conduit" rather than the initial transferee of funds paid by the debtor, because it was simply a conduit for placing money in the trust for the benefit of its investors. The court concluded that the bank, even though it had duties to the trust's beneficiaries concerning the application of funds, was nonetheless the owner of the funds and the initial transferee for purposes of a preference action. 619 F.3d at 691-92.

Even if the AUG LLCs have contractual or other duties to the other defendants, they are nonetheless the initial transferee and their subsequent transferees are entitled to assert the defenses arising from such status. The AUG LLCs had the ability to control the funds, disburse the funds, and put the funds to its use. The AUG LLCs had dominion and control over the property and were not simply conduits. In fact, the subsequent transferees had no dominion or control over the subject funds (until they were *subsequently* transferred) and cannot be deemed initial transferees.

**C. The actual transferees cannot also be the initial entity "for whose benefit such transfer was made"**

The Trustee seeks recovery under 11 USC §550(a)(1) on the theory that the defendants were the entities "for whose benefit such transfer was made." However, as noted above, the Complaint alleges initial transfers to the Santangelo Trust Account held for the AUG LLCs and

7

then a second round of transfers to the other defendants. The subsequent transferees under 11 U.S.C. § 550(a)(2) and (b), cannot also be the entity "for whose benefit a transfer was made", as set forth in 11 U.S.C. § 550(a)(1). *See Lowry v. Sec. Pao. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 29 (4th Cir. 2002) ("a subsequent transferee cannot be the 'entity for whose benefit' the original transfer was made"); *see also Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988). The second clause of §550(a)(1) is applicable to someone who receives the benefit of a transfer, but does not actually receive the money, i.e. a guarantor. *See Bonded*, 838 F.2d at 895.

### D. The Trustee has alleged no applicable basis to "collapse" the transaction.

The Plaintiff's last theory to avoid the subsequent transferee defenses is a request for the Court to "collapse" the transaction. Without factual allegations and certainly inapposite to the actual factual allegations of the transaction, the Plaintiff ostensibly asks the Court to treat these transfers as one transaction. However, the circumstances under which such theory has been applied are contrary to the allegations of these transfers and the undisputed way in which these transactions took place. *See JIBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995). The principle put forth by the Trustee is employed in cases in which "one transferee gives fair value to the debtor in exchange for the debtor's property, and the debtor then gratuitously transfers the proceeds of the first exchange to a second transferee. The first transferee thereby receives the debtor's property, and the second transferee receives the

8

consideration, while the debtor retains nothing." Id.    Unlike the leveraged buyout transactions to which this theory is typically utilized, in this case, the consideration and the transfer were by and to the same entity which subsequently transferred the property for consideration to subsequent transferees.

In addition to the inapposite factual circumstances of the transaction, Courts require the transferees to have "actual or constructive knowledge of the entire scheme that renders [its] exchange with the debtor fraudulent." Id.; *see also Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 2011 WL 309583, *10 (Bankr. S.D.N.Y. 2011. The trustee does not allege knowledge and participation in the actual fraudulent scheme on the part of any defendant sufficient to meet the necessary threshold to "collapse" the transaction.

### E. The alleged transfers occurred in Florida and are not subject to Connecticut law.

The Plaintiff's Fourth and Fifth Claims for relief seek redress pursuant to Connecticut Law (CUFTA); however, the transfers alleged in the complaint occurred in Florida and are accordingly subject to Florida substantive law. The Complaint alleges, and there is no dispute that the transfers were made to the Santangelo Trust Account in Florida and that the subsequent transfers were sent from such account. Connecticut state law does not apply to the transfers to the movants hereto.

## II. Florida LLC Distribution Claims

In his sixth and seventh claims for relief the Trustee asserts claims under Florida's limited liability company statute, Florida Statutes Chapter 608, specifically Fla. Stat. §§ 608.426 and 608.428. However, the Plaintiff has no standing to bring such claims and such claims are not property of these bankruptcy estates.

Fla. Stat. §608.426 provides that "no distribution may be made if after the distribution the limited liability company would be insolvent," and provides a remedy *to the members of an LLC* against managers who vote for a distribution by an insolvent LLC:

> A manager or managing member who votes for or assents to a distribution made in violation of this section, the articles of incorporation, or the operating agreement, is personally liable **to the limited liability company** for the amount of the distribution that exceeds what could have been distributed without such violation if it is established that the manager or managing member did not perform the manager's or managing member's duties in compliance with s. 608.4225. In any proceeding commenced under this section, a manager or managing member has all of the defenses ordinarily available to a manager or managing member.

Fla. Stat. §608.426(3). By the plain language of the statute, liability runs only to the LLC itself.

Likewise, Fla. Stat. 608.428 provides a cause of action against LLC members who receive distributions from an insolvent LLC, but again gives standing only to the LLC:

(1) If a member receives a distribution in violation of the articles of

> organization, the operating agreement, or this chapter, the member is liable **to the limited liability company** for a period of 3 years thereafter for the amount of the distribution wrongfully made.
>
> (2) A member may not receive a distribution from a limited liability company to the extent that, after giving effect to the distribution, the limited liability company would be insolvent.

Fla. Stat. §608.428.

The only decision interpreting the statute in Florida is *Lindberg v. Crowley Group, LLC*, 2008 WL 7600831 (Fla. Cir. Ct. Oct. 31, 2008), where the court held that a defendant, who sought to recover against an LLC manager who authorized distributions to equity members, does not have standing to enforce §608.426:

> Here, Chapter 608 does not expressly provide a civil cause of action. Further, this Court finds that the class of individuals Chapter 608 sought to protect were members of a limited liability company, not the public. Finally, the legislative intent would appear not to create a private cause of action for individuals to seek damages against a limited liability company for internal procedures and duties of members to one another. Id.

### III. Unjust Enrichment

Where the parties obligations are governed by an express contract, the law of equity will not permit recovery for unjust enrichment concerning the same subject matter. The Plaintiff's unjust enrichment claim is not an avoidance claim pursuant to the hypothetical powers of §544, it is a state law claim brought in the shoes of the Debtor. The alleged transfers were made to the AUG LLCs pursuant to the terms of express and detailed contracts between the parties, and

under such circumstances, a claim for unjust enrichment does not exist. *See e.g. Kovtan v. Freeriksen*, 449 So. 2d 1 (Fla. 2d DCA 1984); *Crossland Inv. Co., Inc. v. Rhodes*, 274 F. Supp. 2d 1032, 1314 (N.D. Fla. 2003); accord *George v. Tanner*, 696 P. 2d 891, 894 (Id. 1985)(noting that the doctrine of unjust enrichment "does not operate to rescue a party from the consequences of a bargain which turns out to be a bad one.").

The doctrine of unjust enrichment is a creature of equity which permits recovery where inequitable circumstances such as mistake, coercion, fraud or breach of fiduciary duty create a situation for which the law does not provide relief. Such is not the case in the instant litigation where the Trustee has asserted his rights to recover based upon numerous legal theories. Unjust enrichment is not simply a backstop for recovery where a party cannot sufficiently meet or prove the elements of its additional claims; however, the Trustee attempts to use his claim for unjust enrichment in exactly that manner.

Assuming the Trustee may proceed with a claim for unjust enrichment, he must establish the factual elements entitling him to relief and not merely attempt to utilize the theory as a less burdensome fraudulent transfer claim or a claim to recover preferential payments not otherwise available under the law. *See e.g. Stenger v. World Harvest Church, Inc.*, 2006 U.S. Dist. LEXIS 15108, 11 (N.D. Ga. 2006)(applying GA law); *B.E.L.T., Inc.*, 403 F. 3d 474, 477 (7th Cir. 2005)(Easterbrook, J.).

An unjust enrichment claim requires that the plaintiff establish inequitable circumstances between the parties to the transaction, such as wrongdoing on the defendant's part, either in obtaining the funds or in retaining them, if they were properly obtained. *State of Wisconsin v. Reese*, 612 F. 2d 963, 966 (5th Cir. 1980); see *Suttles v. Vogel*, 126 Ill. 2d 186, 194 (Ill. 1988); *Crossland Inv. Co., Inc. v. Rhodes*, 274 F. Supp. 2d 1032, 1314 (N.D. Fla. 2003)("An action for unjust enrichment cannot be used [to] relieve a party from the terms of the contract it entered.").

As aptly noted in *Stenger v. World Harvest Church, Inc.*, 2006 U.S. Dist. LEXIS 15108, 11 (N.D. Ga. 2006), "The party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost. That is even where a person has received a benefit from another, he is liable to pay therefore only if the circumstances of its receipt or retention are such that, *as between the two persons,* it is unjust for him to retain it." Notably, in *Stenger*, the court granted summary judgment for the defendant under circumstances in which a receiver was utilizing a claim of unjust enrichment to seek recovery from a party who received substantial monies as gifts and tithes for no consideration from receivership entities alleged to be engaged in a Ponzi scheme.

The unjust enrichment claim fails due to the express contract with the Debtor pursuant to which the alleged transfers to the AUG LLCs were made and the claim should be dismissed.

WHEREFORE, Defendants AUG PARTNERS LLC, ROBERT STEIN, individually and as Trustee, and ELAINE STEIN, individually and as Trustee, respectfully request that the Court

dismiss the Plaintiff's claims for relief against them, and for such further relief appropriate under the circumstances.

Dated at New Haven, Connecticut this 11th day of May, 2011.

BY: _____
Robert W. Lynch, ct00412
Hugh F. Keefe ct 05106
Lynch, Traub, Keefe, & Errante, P.C.
52 Trumbull Street, P.O. Box 1612
New Haven, CT 06511
203-787-0275; 203-782-0278 fax
rwlynch@ltke.com

AND

**RICE PUGATCH ROBINSON & SCHILLER, P.A.**
101 N.E. Third Avenue, Suite 1800
Ft. Lauderdale, Florida 33301
Telephone No.: 954-462-8000
Facsimile No.: 954-462-4300
ARTHUR HALSEY RICE
Florida Bar No. 224723
CRAIG A. PUGATCH
Florida Bar No. 653381\