UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

In re:

| | |
|---|---|
| MICHAEL S. GOLDBERG, LLC, | Case No. 10-23370 (ASD) |
| MICHAEL S. GOLDBERG, | Case No. 10-23371 (ASD) |
| | (Jointly administered under 10-23370) |
| Debtors. | Chapter 7 |
| _____/ | |
| JAMES S. BERMAN, Trustee, | |
| | Adv. Proc. No. 11-02013 |
| Plaintiff, | |
| v. | |
| AUG LLC, *et al.*, | May 13, 2011 |
| Defendants. | |
| _____/ | |

**LLC MEMBER DEFENDANTS' RESPONSE IN OPPOSITION TO
(1) PLAINTIFF'S MOTIONS FOR PRE-JUDGMENT REMEDY AND
(2) PLAINTIFF'S MOTIONS FOR PRE-JUDGMENT
<u>DISCLOSURE OF PROPERTY AND ASSETS</u>**

The "LLC Member Defendants"[1] hereby respond to the Trustee's Motion for Pre-Judgment Remedy filed April 1, 2011 [DE 61] (the "PJR Motion") and the Trustee's Motions for Pre-Judgment Disclosure of Property and Assets filed April 5, 2011 [DE 63-114] (collectively, the "Discovery Motions"). The LLC Member Defendants respectfully submit that this Court lacks jurisdiction under the Connecticut pre-judgment remedies statute, Conn. Gen. Stat. § 52-278a through 52-278g (the "PJR Statute"), to attach assets of any of the LLC Member Defendants that are outside the state of Connecticut, and that the Trustee has not established any other grounds or authority for such a remedy prior to judgment. The LLC Member Defendants further submit that the Court should first determine the extraterritorial application (or absence thereof) of the PJR Statute before conducting further proceedings on the PJR Motion and Discovery Motions.[2]

In support, the LLC Member Defendants state as follows:

---

[1] The "LLC Member Defendants" consist of the following defendants, each of whom is the holder of a membership interest in the Florida limited liability companies AUG LLC and/or AUG II, LLC: Nancy Adelis, Thomas Almy, Baystate Capital, LLC, Edward B. Caudill, Jeffrey Chizmas, Stuart J. Cohen, individually and as beneficiary of Stuart Cohen IRA, Dixie Plumbing Service, Inc., B. James Doerksen, Kirk Elyakin, Marilyn Elyakin, Robert H. Fier, Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Financial Security Services Defined Benefit Plan, Financial Security Services, LLC, Barry Gorsun, Deborah Yalowitz Haile, Howard McDonald Haile, Haley Family Limited Partnership, Debra Hoffman, as Trustee of Hoffman Family Trust, Hyatt Family Limited Partnership, Gilbert E. Hyatt, III, as General Partner of Hyatt Family Limited Partnership, and as General partner of Haley Family Limited Partnership, Gilbert E. Hyatt, IV, Patty R. Hyatt, as General Partner of Hyatt Family Limited Partnership and as General Partner of Haley Family Limited Partnership, Robert Jerome, Jill S. Kadingo, Richard M. Kadingo, Jess Kravitz, Jason Lieblich, Marcus Family Partnership, Steven E. Marcus, as General Partner of Marcus Family Partnership, Jay Marmer, individually and as Trustee of Marmer Family Trust, and as Trustee of Financial Security Services Defined Benefit Plan, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Jeremy Marmer, Joshua Marmer, Mark Marmer, Shirley Marmer, Stefani J. Marmer, individually and as Trustee of Marmer Family Trust, Tovah Marmer, Mark Moskowitz, as Trustee of Cat's Paw Trust, Elliot D. Pollack, as Beneficiary, Administrator, Manager of Trustee of Property Administration Specialists Inc. 401(k) Plan for the Benefit of Elliot D. Pollack, Property Administration Specialists 401(k) Plan for the Benefit of Mr. Elliot D. Pollack, Sidney Richman, N. Louis Shipley, Strategem Associates, Inc., and Jeffrey Webster.

[2] As such, the LLC Member Defendants reserve the right to further respond on the substantive merits of the Trustee's PJR Motion in the event the Court determines that the PJR Statute applies to the LLC Member Defendants.

2

## BACKGROUND

On February 11, 2011, the Trustee filed a Complaint commencing this adversary proceeding against roughly 60 defendants, including the LLC Member Defendants as well as other separately represented parties. On April 1, 2011, the Trustee filed the PJR Motion and separate Discovery Motions directed to each defendant. A preliminary scheduling hearing has been scheduled for May 17 on all these motions.

According to his plea agreement, Michael S. Goldberg engaged in a criminal Ponzi scheme for many years prior to his arrest in the fall of 2009. For at least part of that time, he engaged in the scheme through his company, Michael S. Goldberg, LLC ("the Debtor"). He pled guilty to three counts of wire fraud, and was sentenced last month to a lengthy term of incarceration. In his written plea, which is Exhibit A to the PJR Motion, Goldberg stipulated to a set of facts binding between him and the U.S. government, including his version of the details of the long-running fraudulent scheme. Goldberg acknowledges, among other things, soliciting millions of dollars of funds under false pretenses, and converting investors' funds to his own benefit and the benefit of others without the knowledge or authorization of the investors.

Defendants AUG, LLC and AUG II, LLC (the "AUG Entities") are Florida limited liability companies. The AUG Entities entered into contracts with the Debtor to provide cash for particular deals that Goldberg told them the Debtor had made with both sellers and purchases of hard goods, by which the Debtor would reap such a profit that it could pay a contracted return to the AUG Entities in three months. The AUG Entities invested in a half dozen contracts and were repaid in accordance with the contractual terms. In September 2009, they declined to invest again.

The LLC Member Defendants were purchasers of membership interests in the AUG Entities. None of these defendants dealt with Goldberg or the Debtor. None of these defendants participated in the management or operation of the AUG Entities.

In support of the PJR Motion, Mr. Berman has attached his own affidavit, which combines facts with innuendo and exaggerates characterizations and misstatements, so melded as to be impossible to separate. The factual support for the PJR Motion then is a combination of Mr. Goldberg's own version of the events and Mr. Berman's spin on a series of communications, among certain of the parties. Many of those facts and allegations will be contested.

## DISCUSSION

### I. The LLC Member Defendants Are Not Subject to a Pre-Judgment Remedy Under the Connecticut PJR Statute.

None of the LLC Member Defendants is a Connecticut resident. With two limited exceptions, none of the LLC Member Defendants own real or personal property in Connecticut, have any business activity in Connecticut, or have any interest in any entity or business venture in Connecticut.[3] Notwithstanding this, the PJR Motion seeks an attachment or garnishment of all defendants' real and personal property "wherever located" to the extent necessary to secure the amounts of all of the funds they were paid by the AUG Entities. As to the LLC Member Defendants, the amount is asserted to total in excess of $7.5 million, collectively. The overwhelming majority of those funds represent a return of the capital provided by the LLC Member Defendants to the AUG Entities.

The Trustee purports to seek this relief pursuant to the Connecticut PJR Statute, in conjunction with Rule 64 of the Federal Rules of Civil Procedure. That rule provides:

---

[3] Two of the LLC Member Defendants – Thomas Almy and Jess Kravitz – have ownership interests in assets located in the state of Connecticut, and accordingly are differently situated than the other LLC Member Defendants.

4

> (a)   Remedies Under State Law—In General.  At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.  But a federal statute governs to the extent it applies.
>
> (b)   Specific Kinds of Remedies. The remedies available under this rule include the following—however designated and regardless of whether state procedures requires an independent action: arrest; attachment; garnishment; replevin; sequestration; and other corresponding or equivalent remedies.

Fed.R.Civ.P. 64; Fed.R.Bankr.P. 7064. However, a pre-judgment remedy under the Connecticut PJR Statute and Rule 64 is simply not available here, for jurisdictional reasons.

Connecticut's PJR Statute is codified in Conn. Gen. Stat. §52-278a through 52-278g.[4] It creates an entitlement to pre-judgment remedies upon a showing of "probable cause" that a judgment in at least the amount of the pre-judgment remedy sought, taking into account any known defenses, counterclaims, or setoffs, will be rendered in favor of the plaintiff.  §52-278d(a). The statute also prescribes the procedure for seeking such a remedy. §52-278c, §52-278d.

The Connecticut PJR Statute accordingly sets a lower threshold for relief than that which is typically required for obtaining pre-judgment relief in other jurisdictions, where such relief must typically be sought by injunction. A party seeking an injunction, as governed by Rule 65 rather than Rule 64, must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Shapiro v. Cadman Towers, Inc.,* 51 F. 3d 328 (2d Cir. 1995).

The United States Supreme Court has strongly discouraged the use of injunctions, even upon such a showing, to tie up a defendant's property *pendente lite. See Grupo Mexicano de*

---

[4] Connecticut Public Acts 73-431. Additional provisions have been added since 1973, so that the statute now extends through §52-278n.

5

*Desarollo, S.A. v. Alliance Bond Fund, Inc.,* 119 S. Ct. 1961 (1999) (holding that, because the chancery courts of England did not recognize such a remedy as of 1789, a federal court may not enjoin the disposition of a defendant's assets pendente lite as an equitable remedy, in the absence of federal or state statutory authority, to prevent preferential transfers, but declining to consider whether a different result would obtain pursuant to Federal Rule 18(b) if the enjoined conduct were a fraudulent rather than a preferential transfer). *See also DeBeers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945) (a court cannot enjoin the disposition of assets generally to assure the defendant's ability to pay a fine); *ITT Community Development Corp. v. Barton,* 569 F. 2d 1351 (5th Cir. 1978) (court cannot enjoin the disposition of assets simply to secure an eventual money judgment); *Rosen v. Cascade International, Inc.,* 21 F. 3d 1520 (11th Cir. 1994) (use of injunctive relief as substitute for prejudgment attachment is improper). *Compare Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. 229, 85 L. Ed. 189 (1940) (affirming the granting of an injunction in connection with an equitable action to rescind for securities fraud and to recover the investors' funds).

As a general matter, pre-judgment remedies are in derogation of the common law and, therefore, pre-judgment remedy statutes must be strictly construed. *Cahaly v. Benistar Property Exchange Trust Co.,* 268 Conn. 264, 842 A. 2d 1113, 1117 (2004). While a plaintiff's *failure* to meet the probable cause standard at an early stage of the case does not prevent the plaintiff from establishing entitlement to a judgment, and post-judgment remedies, after trial, *see Quest Communications Corp. v. Gray,* 2002 WL 1041690 (Conn. Super. Apr. 30, 2002), the plaintiff's *success* in meeting the probable cause standard results in a deprivation of the defendant's assets that may force the defendant to settle a case that the plaintiff never could have won at trial.

6

Accordingly, the LLC Member Defendants submit that evaluating the extraterritorial applicability of the Connecticut PJR Statute should be subject to a particularly strict construction.

Because a prejudgment deprivation of property involves a taking of a significant interest in property, the Due Process Clause of the Fourteenth Amendment to the United States Constitution is implicated. Although the Connecticut Supreme Court has upheld the constitutionality of most aspects of the statute, *see, e.g., Fermont Division, Dynamics Corp. of America v. Smith,* 178 Conn. 393, 423 A. 2d 80 (1979), *Sassone v. Lepore,* 226 Conn. 773, 629 A. 2d 357 (1993), it has never addressed the issue of its extraterritorial application.[5]

The starting point for discussing the bankruptcy court's jurisdiction here is 28 U.S.C. §1334, granting original jurisdiction in the district courts over all cases under title 11, over all civil proceedings arising under, or in, or related to, cases under title 11, and over all property of the debtor and of the estate, wherever located. But Congress' use of the words "wherever located" in reference to the debtor's property has not been extended to jurisdiction over property of *defendants*.

Bankruptcy courts obtain jurisdiction over the *person* of defendants by the use of summonses pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure. Rule 7004(d) provides for nationwide service of process, so that bankruptcy courts need not establish minimum contacts with a defendant to meet the Due Process Clause requirements of the Fifth Amendment. *Diamond Mortgage Corp. v. Sugar,* 913 F. 2d 1233, 1244 (7th Cir. 1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991). Bankruptcy Judge Howard

---

[5] The United States Supreme Court in 1991 held the PJR Statute unconstitutional to the extent that it permitted *ex parte* attachment absent a showing of exigent circumstances or the posting of a plaintiff's bond. *Connecticut v. Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991). The statute was amended to cure this deficiency by requiring a showing of particular exigent circumstances to obtain *ex parte* relief against either real property or personal property. The present PJR Motion does not seek *ex parte* relief.

7

Schwartzberg in *In re Curtina International*, 15 B.R. 993 (Bankr. S.D.N.Y. 1981) considered New York's pre-judgment remedies statute in light of former 28 U.S.C. §1471(e), the language of which is substantially identical to present 28 U.S.C. §1334(e)(1) and former Rule 704(f), the language of which is substantially identical to present Rule 7004(d). He held that the bankruptcy court "is not empowered to issue a writ of attachment with extraterritorial efficacy so as to reach property of the defendants beyond the borders of the forum state. *Id.* at 997-98.

This principle is not limited to bankruptcy courts. Pre-judgment remedies may not be extended to a defendant's out-of-state property by a district court, *Paul H. Aschkar & Co. v. Curtis,* 327 F. 2d 306, 309 (9th Cir. 1963); *see also Cahill v. McInnis,* 2007 WL 1174827 at *2 (S.D.N.Y. Apr. 18, 2007) (New York's pre-judgment replevin statute cannot be used as authority for a federal court to issue a writ extending to property outside New York).

Connecticut District Judge Dorsey has addressed the issue, holding that the PJR Statute is *not* applicable to out-of-state assets, and that an order that might restrain those assets prior to the entry of judgment in the case must meet the stricter requirements of an injunction. *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 221 F.R.D. 300, 301 (D. Conn. 2003). In so doing, Judge Dorsey rejected the plaintiff's argument that the Second Circuit's *Hashemi* decision recognized the use of "ancillary orders" upon a showing of mere "probable cause," specifically disagreeing with the one published decision by Judge Cabranes[6] that had approved the plaintiff's proposition. In an earlier ruling where he first considered the issue, Judge Dorsey had noted that other courts had rejected the application of lower attachments standards to extraterritorial property: *Aschkar*, 327 F.2d 306, 310 (9th Cir. 1964) (holding that a California district court had no jurisdiction to reach by attachment assets of defendant in New York, notwithstanding provision of Securities Exchange Act authorizing nationwide service of "process") and *In re Feit & Drexler*, 42 B.R.

---

[6] *Hamma v. Gradco Systems, Inc.,* 1992 WL 336740 (D. Conn. Nov. 4, 1992).

8

355 (S.D.N.Y. 1984) (declining to find that New York district court could issue a pre-judgment attachment of out-of-state assets, but finding that a mandatory injunction requiring specific assets to be transferred to an escrow agent within the state was appropriate where the defendant had made numerous efforts to secrete assets, had shown disregard for court orders, and given false or incomplete sworn testimony).[7]

There is authority that where prejudgment attachment is not available, a court with jurisdiction over the person of the defendant may nonetheless order the defendant to take affirmative action with regard to assets outside the state. *See, e.g., Fleming v. Gray Mfg. Co.,* 352 F. Supp. 724 (D. Conn. 1973) (enjoining Connecticut defendants to return out-of-state stock to the custody of the court pending trial); *Columbia Nastry & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co.,* 367 F. 2d 308 (2d Cir. 1966) (court upheld an injunction restraining the defendant's commission of certain acts in a foreign country); *Niagara Falls Int'l Bridge Co. v. Grand Turk Railway,* 241 N.Y. 85, 148 N.E. 797 (1925) (same). But those decisions involve *injunctions*, which are measured by a much higher standard than attachments under the Connecticut PJR Statute.

For example, in *In re Feit & Drexler,* 760 F. 2d 406, 414 (2d Cir.1985), a bankruptcy trustee had sued the principals of the debtor corporations on fraudulent transfer and other grounds. The bankruptcy court in the Southern District of New York enjoined the defendants from transferring or encumbering their Florida real property, and the district court later entered an injunction prohibiting one of the defendants from transferring or encumbering securities in Switzerland. Still later, the district court entered an injunction directing the defendants to bring the securities to New York where they would be subject to attachment. The Court of Appeals

---

[7] *Security Ins. Co. of Hartford v. Trustmark Ins.Co.,* 2002 WL 32506290 at *3, n. 6 (D. Conn. Aug. 12, 2002).

affirmed the district court's rulings on the basis that the required findings upon which the Rule 7065 injunctions were based were supported by the record.

In *Inter-Regional Financial Group, Inc. v. Hashemi*, 562 F. 2d 152 (2d Cir. 1977), *cert. denied*, 434 U.S. 1046, 89 S. Ct. 892, 54 L. Ed. 2d 798 (1978), United States District Judge Zampano of the District of Connecticut granted an injunction against the defendant transferring certain securities. District Judge Newman then entered an order, upon "probable cause," directing the defendant to deliver certain stock certificates from their location in other states to a United States marshal in Connecticut. It does not appear from the facts of the case whether the defendant was located in Connecticut. The Court of Appeals noted that "the transportation of the certificates into the state was a necessary step preceding the actual attachment," and consequently assessed the propriety of the order as if an injunction. *Id.* at 154. Its affirmance of the district court orders repeatedly refers to the orders as injunctions.

The extraterritoriality issue is discussed in District Judge Cabranes' opinion in *Hamma v. Gradco Systems, Inc.,* 1992 WL 336740 (D. Conn. Nov. 4, 1992). In *Hamma,* the court concluded that the "probable cause" standard passes constitutional muster where the pre-judgment remedy hearing is contested (distinguishing a four-justice concurring opinion in *Connecticut v. Doehr* that had stated probable cause was an insufficient basis for an *ex parte* attachment order). Judge Cabranes went further, holding that Rule 65 injunction standards need not be met in order to support an "ancillary order" which compelled a defendant to return stock to the State of Connecticut where it would become subject to attachment. He cited both *Hashemi* and *Fleming* in support of this holding, *id.* at *3, but a careful review of those two decision shows that they did *not* find that "probable cause" may sustain such an injunction in place of "likelihood of success on the merits." The LLC Member Defendants submit that the holding in

10

*Hamma* is simply erroneous, anomalous, and inconsistent with the other published authorities, as well as the much more substantial body of law addressing constitutional due process in this context.

Bankruptcy Judge Ralph Kirscher has addressed a Montana statute that, like the Connecticut PJR Statute, required only a showing of probable cause before issuance of a pre-judgment attachment writ. In *In re Big Springs Realty, LLC,* 426 B.R. 860 (Bankr. D. Mont.), *reconsideration denied*, 430 B.R. 629 (2010), Judge Kirscher concluded that only injunction law, and not the pre-judgment attachment statute, can reach out-of-state property. He noted that District Judge Miller had reached the same conclusion under the Texas statute, in *GM Gold & Diamonds, LP v. Fabrege Co., Inc.,* 489 F. Supp. 2d 725 (S.D. Tex. 2007), and reasoned, like Judge Miller, that if the statute's drafters had intended to make it extraterritorial that is something they would have stated in the statute.

There is no basis in the Connecticut PJR Statute for extraterritorial application, there is no other statute which can be applied under Fed.R.Civ.P. 64 to make attachment extraterritorial, and therefore no pre-judgment remedy against these plaintiffs is available to the trustee.

**II.    No discovery order may be entered where a prejudgment remedy is not available.**

The Trustee also asks the Court to order the defendants to reveal their assets. The LLC Member Defendants submit that such a request is "not reasonably calculated to lead to the discovery of admissible evidence" on any issue other than the identification of assets to be sequestered, and accordingly is improper since the PJR Statute is inapplicable. *See* Fed. R. Bankr. P. 7026; Fed. R. Civ. P. 26(b)(1) (scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense" and any other matter for which discovery

11

is ordered by the court "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").[8]

Section 52-278n of the PJR Statute provides that "the court may order disclosure [of the defendant's assets] at any time prior to final judgment after it has determined that the party filing the motion for disclosure has, pursuant to section 52-278d, 52-278e or 52-278i, probable cause sufficient for the granting of a prejudgment remedy." While some courts have held that the disclosure order may precede the probable cause determination in an arbitration, which is governed by a different statute, even under that statute asset discovery in advance of the probable cause hearing is not permissible where the plaintiff's purpose is identify assets to be attached. *Metal Management, Inc. v. Schiavone,* 514 F. Supp. 2d 227, 240 (D. Conn. 2007) (comparing §52-422, which permits such advance discovery and §52-278n, which does not). Because the LLC Member Defendants have shown that no pre-judgment remedy is available against them in the first place, no discovery order may be entered against these defendants compelling disclosure of assets.

## CONCLUSION

WHEREFORE, the LLC Member Defendants respectfully request that the Court conduct a preliminary hearing to determine that the Connecticut PJR Statute does not apply to any assets outside of Connecticut, and accordingly that the Trustee's PJR Motion and Discovery Motions should be denied.

---

[8] In Florida, where most of the LLC Member Defendants live, as in most states, the rule is well recognized that even in a fraudulent transfer case the personal financial status of a defendant is not discoverable pre-judgment except to the extent it is relevant to the dispute issues of the underlying action. *See Friedman v. Heart Institute of Port St. Lucie*, 863 So. 2d 189, 194 (Fla. 2003) (holding that discovery where a fraudulent transfer count was included in the complaint is nonetheless limited to discovery which is "relevant to the disputed issues of the underlying action").

12

Dated: May 13, 2011
New Haven, Connecticut

/s/ Ilan Markus
Ilan Markus, Esq. (CT26345)
LeClairRyan, a Professional Corporation
545 Long Wharf Drive, 9th Floor
New Haven, Connecticut  06511
Telephone: (203) 672-3212
Facsimile: (203) 672-3231
Email: ilan.markus@leclairryan.com

Counsel for the LLC Member Defendants

- and -

David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, P.A.[9]
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

- and -

---

[9] Counsel for Nancy Adelis, Thomas Almy, Baystate Capital, LLC, Edward B. Caudill, Jeffrey Chizmas, Stuart J. Cohen, individually and as beneficiary of Stuart Cohen IRA, B. James Doerksen, Kirk Elyakin, Marilyn Elyakin, Robert H. Fier, Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Financial Security Services Defined Benefit Plan, Financial Security Services, LLC, Barry Gorsun, Deborah Yalowitz Haile, Howard McDonald Haile, Debra Hoffman, as Trustee of Hoffman Family Trust, Robert Jerome, Jill S. Kadingo, Richard M. Kadingo, Jess Kravitz, Jason Lieblich, Marcus Family Partnership, Steven E. Marcus, as General Partner of Marcus Family Partnership, Jay Marmer, individually and as Trustee of Marmer Family Trust, and as Trustee of Financial Security Services Defined Benefit Plan, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Jay Marmer, and as Trustee of Financial Security Services Defined Benefit Plan for the Benefit of Steven E. Marcus, Jeremy Marmer, Joshua Marmer, Mark Marmer, Shirley Marmer, Stefani J. Marmer, individually and as Trustee of Marmer Family Trust, Tovah Marmer, Mark Moskowitz, as Trustee of Cat's Paw Trust, Elliot D. Pollack, as Beneficiary, Administrator, Manager of Trustee of Property Administration Specialists Inc. 401(k) Plan for the Benefit of Elliot D. Pollack, Property Administration Specalists 401(k) Plan for the Benefit of Mr. Elliot D. Pollack, Sidney Richman, N. Louis Shipley, Strategem Associates, Inc., and Jeffrey Webster.

13

>Patrick S. Scott, Esq.
>GrayRobinson, P.A.[10]
>401 East Las Olas Boulevard, Suite 1850
>P.O. Box 2328 (33303-9998)
>Fort Lauderdale, Florida 33301
>Telephone: 954-761-8111
>Facsimile: 954-761-8112

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2011, a copy of the above filing was served electronically via Notice of Electronic Filing for parties or counsel who are registered Filers through the Court's ECF system and via U.S. Mail on the parties listed below.

Dated: May 13, 2011　　　　　　　　**LECLAIRRYAN, a Professional Corporation**
New Haven, Connecticut

By:/s/ Ilan Markus
　　Ilan Markus, Esq.　　ct26345
　　545 Long Wharf Drive, Ninth Floor
　　New Haven, Connecticut 06511
　　Telephone: (203) 672-3212
　　Facsimile: (203) 672-3231
　　ilan.markus@leclairryan.com

---

[10] Counsel for Dixie Plumbing Service, Inc., Haley Family Limited Partnership, Hyatt Family Limited Partnership, Gilbert E. Hyatt, III, as General Partner of Hyatt Family Limited Partnership, and as General Partner of Haley Family Limited Partnership, and Gilbert E. Hyatt, IV.